Next case is the Interest of N.M. & M.M. We have Mr. Rice for the Appellant and Mr. Ting for the Appellee. Take your time and get ready. We're ready to hear. Thank you, Your Honor. May I speak to this court, counsel? In August 2010, the State's Attorney's Office of St. Clair County filed a petition, a motion to terminate parental rights of the respondent. In their petition, they allege four specific bases to pursue that. We had a trial. Testimony heard. Exhibit centered. Argument made. Judge Brandon made a finding that the respondent was unfit on one of the four bases. That basis being the statutory rebuttal presumption that the respondent had been convicted of at least three felonies, one of which had occurred within the past five years. The court did not find that the statement met its pertinent proof on the other three issues. Since the trial occurred in January of this year, the conviction, of course, the State had proved as part of its elements that the respondent had been convicted within the past five years of filing a petition. And in doing so, they submitted proof of his conviction in the 2008 charge arising out of basically a shot-lifting incident at Monomark and Belleville, 2008 criminal case number, and he was convicted of murder. Since the trial occurred, that criminal charge went up on appeal and this court overturned the conviction. They reversed it and sent it back to the trial court for reasons associated with the jury instructions. I think it's notable that the court noted that the evidence in the criminal case was closely balanced. But initially, our position is that under People v. Wray, which I cited in my brief, that when an appellate court overturns or reverses a judgment, that it is abrogated. The defendant stands as if he had not gone to trial yet. I think the phrase, the elegy used in the case is that it is as if it is expunged from the record. I would submit that that being the case, then the court finding of the defendant being unfit or one of the necessary elements is that the respondent had been convicted within the prior five years should be overturned also. I believe that if this criminal charge had been reversed before we went to trial in January, on January 31, 2011, if the evidence submitted at the juvenile hearing was that he was convicted but the conviction was reversed and sent back, I don't believe that the court would have been able to say that the defendant or respondent was unfit under that specific statutory category. As an alternate matter, I would submit, and I mentioned that in my brief, that I believe that the evidence leading to statutory raises a rebuttal position. All the state has proved that the respondent has been convicted of three felonies, at least one of which occurred within the past five years. They did, but it's not a reclusive presumption, it's rebuttable. And again, looking at the circumstances of the conviction, we produced evidence from the casework that when this shoplifting incident occurred on September 30, 2008, the respondent was in a monomark with the mother of the children and that she later made statements that it was she who had committed this crime and that the respondent took the rap because the officer suggested that if he didn't confess to the crime, then both of them would be arrested and the child would be taken into protective custody by the state and it was only after that occurred that the respondent made the admission which was used against him in the criminal trial. My position would be clearly that a depraved person would not take the rap for a crime that somebody else committed. A deprived person would put his own interest above anybody else. And again, I refer to the appellant court decision in the criminal case talking about the close balance of the evidence and the fact that it did appear that the only time the defendant had in fact made any admission of guilt was after the police officer had told him if you don't, then your child is going to be taken into protective custody. Again, a depraved person, they would have said you're on your own, I'm doing what's, I'm sticking my neck out for nobody, I'm doing what's good for me, we rebutted the presumption. Anticipating the state's argument, the state made the argument in their brief that well, the court could still find that he's depraved because there's case law that says depraved is an evil state of mind. The court could find that his history shows that there's an evil state of mind. My response to that would be to refer to a case cited by the state in their brief, and that is the Illinois 2005 Supreme Court case in Ray Quinn P. And in that case, the Illinois Supreme Court said, basic law, the termination petition brought pursuant to section 2-29 must contain an allocation if the parent is unfit and include specific statutory grounds on which the charge of unfitness is based. A court may not terminate a parent's rights on grounds not charged in the petition. Now, petition filed by the state, lists the four grounds. The only ground that mentions depravity is the specifically defined portion which refers to the rebuttable presumption that the court find him depraved in that he has been convicted of five felonies, one of which occurred within the past five years. The state did not file a petition, did not file a motion making a general allegation of depravity. And I think the case is cited by the state in their brief saying that, well, depravity has a broad meaning and he's still fighting. I think in those cases, it seems to be that there's just a general allegation of depravity made in the petition. There is nothing in those cases saying the state filed a petition alleging depravity under the rebuttal presumption of three convictions. But even if that doesn't get proven or if that doesn't hold water, the court can still find him depraved. I would submit that the Enrig Winpeat case does not allow such a result to occur. The state also argues that the court can still find that the respondent is unfit under the other three bases, alleged petition. I dispute that. The case is cited by the state in those regards. He cites cases that state all you need to do is prove one of the allegations to support a finding of unfitness. In all of those cases, basically, it is a situation where the state has filed a petition making several allegations. Trial court finds the respondent unfit under three or four of the allegations. All appeal, the appellate court may say, well, we find that the trial court erred in finding the respondent unfit under allegation one or two. But there was sufficient evidence to sustain its finding of unfitness under allegation three. And all we have to do is find that there is enough under the third allegation. We don't have to find that the state proved each one. That is not the situation here. In this case, again, four allegations made. Trial court only found that the state met its burden of proof under one. Trial court did not find that the state met its burden under the other three. And I would submit that it would be improper to basically now say, well, we're going to go ahead and find that he's unfit under a failure to make reasonable efforts. As a final thought on that, I think that the state is incorrect in saying that the prosecution met its burden under those alternate allegations. This record, and I apologize for not being more detailed in my reply brief, contains some serious concerns as far as Catholic Social Services and DCFS not accurately pursuing their obligation of working towards the service plan. The state says, well, the respondent wasn't cooperative with DCFS and Catholic Social Services. And there's some evidence in the beginning he wasn't. The first service plan went into effect March 1, 2008. And I use a time period. I break this up into two time periods, March 1, 2008 to September 30, 2008, because that's when the respondent was arrested. And he had been impersonated for the rest of the period of time. But if you look at the period from March 1, 2008 through September 30, 2008, there's one service plan that was evaluation done at the end of August 2008. Service plan goes into effect March 1. I submitted defendant's exhibit, the respondent's exhibits form five, documentation from comprehensive mental health services and phone tasks, showing that in April, the respondent had enrolled in the drug alcohol program, got assessed. As of July 8, he had been successfully discharged from that program. He had met all short-term goals. There were documentation reflecting his attendance in all the various therapy sessions and counseling sessions. And there were numerous counseling sessions he was directed to attend. He had no unexcused absences. And the documentation clearly showed that he successfully completed the initial outpatient recommendation. And he was done to go subsequent follow-up. And we submitted documentation, I think it's the defendant's exhibit five, which shows that he began aftercare. He did three aftercare support group programs shortly thereafter and got arrested on the Baltimore incident. He underwent a domestic violence evaluation. If you look at the first service plan that the state relies upon, they listed it as unsatisfactory in the category of successfully undergoing anger management. When I asked, why did you rate him unsatisfactory, he said, well, we couldn't refer him yet. Why didn't you refer him yet? Because we were waiting to get a report from Provident regarding the domestic violence evaluation. We wanted the written report. Not the respondent's fault. They're waiting for something. When I asked him about the unsuccessful evaluation on the drug and alcohol, they said, well, we had not received anything showing what had happened with the alcohol and drug program he was supposed to attend. I referred him. Exhibits four and five, these are the documents that show that he successfully completed them July 8th. Well, we hadn't received them yet. Again, not his fault. I think there was individual counseling. Again, no referral had been made yet because, again, they were waiting for the domestic violence evaluation. They rated him unsatisfactory on the requirement that he attend psychological evaluation. I asked, why did you rate him unsatisfactory? He goes, well, because he needs to complete successfully a substance abuse program prior to referral and case manager and not yet receive the discharge report from ARTS, which, again, he had been discharged in July. If you go all the way through, even up to the very end, the last service plan, and by this time, even though he had been rated unsuccessful in the parenting class and unsuccessful in anger management, he produced documentation. Those were two things he could do while he was incarcerated, and he submitted proof. I asked the caseworker what programs were available to him while he was at the correctional center, and she said, parenting classes and anger management. We submitted the documentation, and the case manager agreed that he had completed the programs that they had done. They still had him rated unsatisfactory on the requirement that he undergo a psychological evaluation, and I asked, here's your narrative on explaining why he was rated unsatisfactory, and this is 2010 when this evaluation was performed, saying we had received no report showing ARTS completion. In other words, the program that he went through in 2008, they're saying that he was rated unsatisfactory on the psychological evaluation because by 2010, they still had not received this report that he had been successfully discharged in 2008. And so the caseworker, Mara Luters, admitted that, well, the reason that we gave him for being unsatisfactory is inaccurate. He was rated unsatisfactory on the requirement that he successfully complete outpatient drug and alcohol, and I asked her why. She said they had not received the records from ARTS, so they don't know if he completed the program successfully. And again, I mean, this is 2010, and they're doing these service plans, rating the respondents as unsatisfactory, saying we still haven't received reports that were completed two years before. So, I would submit to the court, first of all, that the court, the trial court, made only one finding that the state met for improvement, and that's under the rebuttal presumption conviction. That conviction has been overturned. It's abdicated. It's as if it's expunged from the record, and it should, therefore, be the result that the finding by witness also be reversed. He submitted evidence that he is not depraved, and for those reasons, we would ask the court to overturn the decision. Was it the only basis for the allegation of depravity of convictions? That was the only basis alleged by the state in their motion. Yes, sir. All right. Thank you. Do you agree with that, Mr. Ting, that the only basis for the depravity was convictions? Yeah, I would agree that subsection E1 states very clearly that it is under the rebuttal presumption section. So I would agree with Mr. Rice on that particular aspect, but depravity as a general rule of law can be defined without that rebuttal presumption. The state can still prove depravity without showing three felonies and one within the last five years. The general overarching rule of law is, as I quote in Ray Donald A.G., and I quote, of moral sense and rectitude. And this may be shown by a series of acts or conduct that indicates moral deficiency and an inability or unwillingness to conform to accepted morale. But the state didn't charge those. The state charged five felonies. The state didn't charge that specific type of depravity. So if you go to trial and you're charged with one thing, how do you know you have to do something else that might support the finding of depravity? This is how I would say to the jury. Because the Illinois Supreme Court in People v. Johnson stated, and I quote, it is a fundamental principle of appellate law that when an appeal is taken from a judgment of a lower court, the question before the reviewing court is the correctness of the result reached by the lower court, not the correctness of the reasoning upon which that result was reached. If it goes on further, a logical corollary of that foregoing principle is the rule that a reviewing court can sustain the decision of a lower court for any appropriate reason, regardless of whether the lower court relied on these grounds and regardless of whether the lower court's reasoning is correct. But is the Supreme Court telling us we can now go back and make findings independent of the trial court to justify the ruling? Well, Your Honors, what I think the Supreme Court is saying is that if there is finding from the court, and the court here, the trial court did find a finding of depravity, and that finding of depravity, granted, admittedly, was under a different subsection. But still, depravity as a rule of law is still defined by a series of conduct that shows or exhibits moral inefficiency, moral ineptitude. But to do that, we'd have to find facts that the trial judge did not find. That's not necessarily true, Your Honor. The trial court had before it the same facts that this court has upon it in the record. The trial court – this court still has all the convictions that the defendant had at its disposal. The defendant was convicted of aggravated battery in 2004, retail theft in 2001, vehicular invasion in 2001, burglary in 2001, aggravated battery in 1997. Now, surely, this would be a much easier issue for this court to handle if the state's attorney had done the wise thing and had alternative grounds for depravity. But that in and of itself does not make this appeal become moot. There's an inefficiency in judicial administration if we allow for someone who is clearly depraved. He had four – no, five felonies, five felonies. Felonies that show both deception, as you can see in his retail theft and burglary convictions, as well as violence and his battery convictions. The trial court had these before, so the trial court considered this evidence. And the trial court did find him depraved. Admittedly, the trial court found him depraved under a different section than was alleged by the statement. But the general rule of law, as I stated, is depravity. It's not something different. So what you're saying basically is anybody, no matter what their background is, no matter what the other facts are, if they've been convicted of these three things, they're depraved. Under that subsection D-1. The requirements for subsection D-1 are clear, yes. There's a rebuttal presumption of depravity if there are three felony convictions and one conviction in the last five. But we don't have that. We do not have that. What you're arguing, though, we don't have that anymore. We've got these other ones. And based on these other convictions, the only conclusion the court could draw is that he's depraved. Absolutely, Your Honor. Clear and convincing evidence. Clear and convincing evidence that he was depraved. Again, the rule of law, as defined by depravity, is a series of conducts that exhibits moral ineptitude. And that's what we have here. The defendant continually violated the law. He continually broke the law. And he did nothing to rectify his character and situation. I handled the case below, or the case on appeal here, as far as the one that was reversed, which would have been within the five-year period. And it was a technical error, again, on the State's attorney's part, as far as jury instruction, specifically whether the jury – they submitted a jury instruction on the – whether if the jury found each of these elements not proven beyond a reasonable doubt, then they could find the defendant not guilty. Obviously, the wording should have been any of these elements, so it would have created a higher standard of proof. But that was the real issue there. It didn't have to do with the defendant's guilt or innocence. Now, the defendant here states that this court went into some detail as far as the closeness problem, the plain error problem in the case on appeal that was reversed. But again, that was more of a factual testimony between the clerk and the bottle of Mad Dog 2020 that the defendant had stolen. And how it got into the defendant's girlfriend's purpose. And they said, we can't really mesh out these facts. So I understand where this court came as far as its ruling. But again, we're looking at depravity. The rule of law is depravity. A subsection D-1 states this specific way. It is not the exclusive way to find depravity. The trial court did find depravity, and this court can reach that same conclusion by looking at a different subsection, which it is allowed to do under Illinois Supreme Court while present. Granted, it is difficult because it's not something that we see every day. This is an issue of first impression in Illinois. Nevertheless, I submit to you under these well-settled principles of appellate law, this court can still find depravity. But it's kind of hard to defend yourself against something that you're not charged with, isn't it? Your Honor, I would agree with you that it would be difficult to defend yourself against that. But the defendant did defend himself. Again, the defendant did defend himself in that he tried to put on evidence that showed that those felony convictions were all unpassed. I mean he did put on evidence to show that he was not depraved. And remember, even if you have three felony convictions and one occurred within the last five years, as is a rebuttal presumption under subsection D-1, still, the defendant can still rebut that. The defendant put on his evidence he had an opportunity to show the trial court that he wasn't depraved. The trial court found that he did not meet the rebuttal presumption. The trial court could have easily found, had the allegation been made, that he was depraved under a series of conduct for his violent and deceptive felony past. Alternatively, Your Honor, if that argument does not meet today, I would say that there's still clearly convincing evidence of the three other alleged grounds. Now, the defendant states that the trial court did not find or make a ruling on these particular allegations. I would say the more accurate characterization of that is that the trial court did not comment on them. The trial court merely said he's depraved under subsection D-1. They said one paragraph. That's all the trial court said. But it did not specifically find, I do not find that the defendant has made reasonable efforts ever the basis to remove, return NM and NM back to them. The trial court made no finding onto the reasonable process, progress of the return of NM or NM during any nine-month period subsequent to the first or initial nine-month period for the permanency evaluation. The trial court did not comment in its ruling on the incarceration of the defendant during the time of filing and then the repeated or continual incarceration throughout the discharging of parental duties. So the trial court did not specifically comment on it. So for the defendant to characterize the trial court did not find is not necessarily true. The trial court simply did not comment on it. And the trial court probably thought there's no reason to. I mean, it's pretty clear. We have subsection D-1. He's got more than three felonies and one was in the blue last year. I find that there's not anything to show that he's not the culprit. Order done. But had the trial court commented and said I find these three allegations specifically that they were not met, it would have been different. But what this court has is a trial court that did not rule upon those. You're asking us to find based on the record that one of those three things exist. There's clear and convincing evidence for all three that the trial court could have done. Is that our standard? I mean, are we doing this as a matter of law? We're finding this off this record? Your Honor. A de novo standard of review? No, not a de novo standard of review. A de novo standard of review as far as looking at the evidence. But it's a clear and convincing standard that the state had approved. This appellate court can look. Again, I would point this court to the reasoning of the Illinois Supreme Court, which states that this court can adopt the result of the trial court even if the trial court was incorrect. And we have three alternative bases in the record in which the trial court could have found the defendant guilty. And so this trial court can adopt the trial court's overall ruling that the defendant's termination of his parental rights was correct. By looking at these three alternative grounds and stating that any one of these the trial court could have found had the trial court done so. Admittedly, again, this argument is an issue of first impression and a particular situation as such. But the rules of law are well settled. The rules of law are unquestioned. An appellate court or a review court has jurisdiction to reach the conclusion of a trial court regardless of the trial court's reasoning and even if the trial court was incorrect. So that – because of that, this trial court can look at it. And when we look at these three alternative allegations, we see for the first one, the defendant failed to make reasonable efforts to correct the conditions that were the basis of the removal for M.M. and M.M. Well, M.M., his firstborn child, was removed from the hospital. The defendant didn't even live with M.M. because the baby had tested positive for cocaine. You can find that on page 12 of the record. As for N.M., she was given to the defendant and his girlfriend, the mother of M.M. and M.M., on August 21. But by December 16, N.M. was taken away from their custody because the mother of N.M. and M.M. was found intoxicated during an evaluation or an inspection visit from DCFS. Now, there may be the question, well, what does that have to do with the defendant? What did he do to correct the situation? Your Honors, three positive tests for cocaine in 2007 to 2008 and one positive test for an opiate. You can find this on page 20, 72, and 83 of the record. The defendant had a drug problem and he continually used drugs after time and time again failing. This is clear and convincing evidence that he failed to make reasonable efforts to correct the conditions, i.e., drug abuse, that were the basis for the removal of both M.M. and M.M. As far as the second allegation, the respondent repeatedly failed to make reasonable progress towards the return of M.M. or N.M. during any nine-month period after the end of his initial nine-month period. Well, again, we look at Ms. Lutheran at DCFS or the Catholic Social Services foster care supervisor, which she had experience of over 100 cases and parental custody rights. And she stated, and I quote – not and I quote – that the respondent never successfully completed all the requirements of his plan for either M.M. or N.M. That's in 23 of 35 of the record and 115. Now, the defendant does make some argument that, well, it was the machinery of the process. What happened is that he tried to do it and that even when he got it done, the social services didn't contact DCFS and tax didn't contact DCFS. So there was a – it got lost in the mail, so to speak. But it wasn't any fault of his own. That is not true. Ms. Luther stated specifically, and I quote – this is a quote – he wouldn't meet with the integrated assessment screening. He wouldn't meet with tests. He wouldn't meet with the DCFS worker at that point. The defendant was extremely uncooperative once the treatment plan began to actually work with them. So the reason this got lost in the mail is because it took forever for him to do it, and when he finally did it, then there was some type of holdup within the different agencies and communication. But the defendant's initial resistance to that shows his unwillingness to make reasonable efforts to correct those conditions to return N.M. and M.M. Again, when he finally did it, he scored in the 96th percentile for violence and the 88th percentile for control, which is clear from the record as Ms. Luther stated. When she'd done one of her visits, there were injuries caused to his girlfriend's face, clearly from domestic violence, on page 16. So again, we have clear and convincing evidence. And again, I want this court – lastly, to page 115, in which the – Ms. Luther states that he never finished a family service plan to obtain treatment for anger management, never successfully obtained treatment for his plans ever. At the trial, that was the testament. And the defendant can state – Why do we have to accept that? I mean, you're quoting us everything that's favorable to your case. Now, how does the appellate court decide that that's truthful and not the other side? We haven't heard any of this. The trial judge made no findings that we're reviewing. We're making all the findings. Your Honor, it's a fair point. It's a fair point, but I would state that what we – what this court can do is to review the evidence, look at the record, and see whether there is clear and convincing evidence to show the defendant did not make reasonable progress in the return of M-M and M-M within the nine-month period. Absolutely, this court would make some findings. And I'm not going to contest that. But what I will state is if we go back to the principle of law, that this court can affirm trial court's ruling regardless of the trial court's reasoning or the trial court's methodology for doing so. And lastly, as far as the defendant's continual incarceration, again, just over a month passed before the respondent was taken into custody on September 30th, 2008. From that time on, he's never been released. The defendant's own attorney asked, as Mr. Reiser will admit, okay, would it be fair to say the major reason why he's been rated unsatisfactory in all subsequent service plans is because he's been either in jail or prison? Ms. Lewis admitted, yes, absolutely. It's on page 65. So the defendant has had a history of criminality. And the manifest weight of the evidence shows that this court can find a problem, not under subsection D-1, and the state will not contest that, but under the general understanding or rule of law for the problem. And moreover, there are three alternative allegations that the trial court should have made findings on, which would show that the defendant could also have his employment rights terminated for those bases. And it's for that reason that the state urges this court to affirm the trial court's overall ruling that the defendant was unfit to be a jury. Do you have any questions for me? Thank you, Your Honor. Mr. Reiser, do you have a problem? Very briefly, Your Honor. As far as the still being able to find the trait under other theories, I stick with the Illinois Supreme Court case of Ed Ray Quinn, 2005. You can only find someone unfit based upon what is alleged in the petition. The state argues that, well, he was able to present evidence on the issue of privity. We submitted very little evidence based upon the specific, specific category of privity that the state alleged. If the state would have alleged general privity, we might have put on different evidence. But all we did was put evidence on to show that in this conviction here, there's a lot of evidence, the testimony of casework regarding statements made by the mother of this child, the respondent's girlfriend, that she's the one who had committed the crime, not him, that he took the rap, so that the baby wouldn't have to be taken into custody. So I find it a very, very dangerous argument the state is making here that the state can allege one basis or four bases to find somebody unfit, and that this appellate court can say, well, even though we don't find that there is evidence to uphold any of those, we're going to find that there's a fifth category that we can find him unfit on that wasn't even raised in the trial. I think that's dangerous. Same thing with his argument. But I'll leave it there. All right, counsel. Thank you for your briefs and arguments. The court will take a matter under advisement to render its decision.